White, J.
This suit is brought against the defendant Davis as indorser of a promissory note given by one Beach.
It appears that at the time the note in question was made, Beach the drawer, lived in, and kept a store in the city of Newark j his dwelling house being in one part, and his store in another part of the city : that Davis, the defendant, was a clerk in Beach’s store, and continued there until a short time before the note became payable, which was on the 1st day of July, 1837.
After making the note, and before it became payable, Beach the drawer, sold out his store to one Aber, who took possession of the store goods, and continued in the same place, retained the same clerks, of whom the defendant Davis was one, and kept up the name of Beach on the sign • making no external change, and no notice was given of the change of owners. Beach was employed afterward in the store, stayed there most of his time, transacting his business, settling his accounts, and sometimes, payment of his notes was demanded of him there. Johnson and defendant Davis, the clerks of Beach, remained in the store after Aber purchased, until a short time before the note indorsed by defendant became due, when Davis removed from Newark to some place in Warren county.
When the note was payable, demand of payment was made at the store formerly Beach’s, and where he continued to do business as long, as by the case it is shown, he did business any where, at the proper time, and by a person authorized to make demand. This demand of payment (Beach being absent) was made of Mr. Johnson, who was clerk to Beach whilst he owned the store, and who transacted business for him, after he had sold out to Aber. Of this demand and non-payment,'notice was given by a letter put in the post-office in Newark, on the Monday morning after the demand, which was on Saturday, addressed to the defendant at Hope, in the county of Warren. The person who made the demand of payment, having inquired of Johnson the clerk at the store, and also of one Nathan Hedges, in whose name the note was lodged for collection in the Newark Bank, for the place of residence of defendant, received information that *278 the defendant had removed to Hope, in Warren county. It appears that the defendant had removed from Newark, as early as the 20th of June, 1837, and had gone into Warren county, with his family; but as late as the 20th he had not made any place his residence, or commenced business any where, so that his residence in Warren, could be notorious or generally known.
Two questions were made in this case.
1. Whether the demand of payment at the store, formerly Beach’s, and where he transacted business after he sold out to Aber, was sufficient, or whether the demand should have been at the dwelling of Beach, where I believe, his family still remained.
2. Whether notice sent by the letter directed to defendant at Hope, in the county of Warren, was sent to the right place.
This question I think must be answered in the affirmative, if the inquiry for the residence of defendant, was fairly and honestly made with care and diligence. The defendant was, or had been until a short time prior to the day of payment of the note, a clerk in the store formerly Beach’s, where Johnson also was a fellow clerk. At this place, and of this clerk, it was natural, that the clerk of the Notary should inquire for the information wanted. The defendant could not be ignorant, that the note would fall due in a few days after he left his old residence; and it was reasonable to expect if he wanted to know whether the note was honored or not, on the day it became payable, that he would have left with his fellow clerk, information where he could be found, or where the information would reach him, if sent by letter. But the clerk of the Notary, not getting the information at the store, inquired of Mr. Hedges, the person who had placed this note in Bank for collection. He was likely to know where the indorser of the note could be found or had gone to reside.
Of Mr. Hedges, the same information was received, that the defendant had removed to Hope in Warren county; from this information, received from such source, could the clerk or officer doubt but that a letter directed to Hope, would reach the defendant. Why should he doubt, that-the information he received was correct ? When the removal was so recent, and there being no pretence that more correct or better information could have been obtained, I think there was due diligence made to find out the residence of the defendant; and if the notice to the defendant had *279 been directed to any other place than Hope, the officer would not have done 1ns duty. But I think the question of diligence as to the residence of the defendant, was a question of fact and as such should have been left to the jury, to say whether the inquiry was made fairly, fully and in good faith, and if they found due diligence in this particular, then I would say, the notice being sent to Hope, was using due diligence, and sent to the proper place, and would have been sufficient to charge the indorser; provided the demand made at the store or counting house of the drawer, was a sufficient demand of payment. See 1 John. Hep. 294-6; 6 East, 10.
The indorsee must give reasonable notice of the non-payment; but proof of making inquiry after defendant, who could not be found, will be sufficient to excuse the giving such notice, unless the defendant can prove, that he was to be found. B. N. P. 273. The plaintiff may prove in excuse for not giving notice of the non-payment, that the indorsee was ignorant of the indorser’s place of abode, and then it is a question of fact, whether he has used due diligence to find it out. He ought to show that he has made diligent inquiry in the place likely to receive information : but whether due diligence has or has not been used, is a fact to be left to the jury. Vide the case of Bateman v. Joseph, 12 East, 434. In this case, the court say, that whether due notice of the dishonor of a bill, all the circumstances necessary for giving such notice being known, is a question of law; but whether the holder has used due diligence to discover the place of residence of the person to whom notice is to be given, is a question of fact for the .T'V-
It is due to indorsers who frequently engage for the payment of the debts of others, that they should have notice of the default of the maker; but it is likewise due to those who receive this kind of security in the course of trade, that no unreasonable ex-actions should be put upon them; and we must take care whilst we require due diligence to be used by the holders of notes, that we do not exact too much. We should not require that every possible exertion which might be made, should be done. If all is done which a prudent and diligent man would naturally do under like circumstances, it should be considered sufficient. Or if the indorser’s own conduct has created the difficulty in discov *280 ering his place of abode; if he has about the time of the note falling due, for he must be supposed to know the time, removed to an obscure place, and that recently, and has left no one to give correct information, as to the place to which he has removed, he ought not to reap any advantage from his own conduct; and the indorser who shows from his own conduct, that he don’t want information, has no right to complain of the want of notice of non-payment.
It would be better to require of an indorser to give notice of his change of residence, than to require of the holder of the note to ask every man in the town, where he is to be found in order to send him notice. To be sure if he has removed a long time, and not to an out of the way or obscure place, the ease should be different.
In my opinion, the demand of payment made at the usual place of business of the maker of the note, under the circumstances in this case, was sufficient; and the notice sent to Hope, was sent to the right place under the information received of the residence of the defendant, and that the question, whether due diligence was used to find out the place to which the defendant had removed, was a question of fact, which should have been left to the jury, for their consideration.
I think the verdict should be set aside and a new trial granted.
Nevitjs, J.
This suit was brought against the defendant, as the indorser of a promissory note, drawn by Isaac C. Beach. It was tried at the Essex Circuit, in the term of A. I). 183 . Upon the trial, the plaintiff proved the handwriting of the drawer and indorser, and that at the date of the note, the defendant resided at Newark, and was in the employ of Beach, as a clerk. That he was a married man, kept house in Newark and left there with his family some time in June, and before the note fell due. He further proved, that the note in question was presented for payment at the store of the drawer in Newark, to a Mr. Johnson, his clerk, the drawer not being in at the time. That payment was there demanded and refused. That notice of non-payment was made out, directed to the defendant at Hope, Warren county, N. J. and placed in the post-office at Newark, on Monday morning next after the presentment. Before this *281 notice was sent, the witness who acted as agent of the notary, and who made the demand, testified, that upon inquiry at the store of Beach, he was informed, that the defendant had removed to Hope, that he was also so informed by Nathan Hedges, in whose name the note was lodged for collection in the Newark Bank. That the information received at the store of Beach, was given by Johnson, his clerk.
Upon the part of the defendant, it was proved, that Beach had sold out his stock in trade in April, 1837, to one Aber, and that the defendant was clerk there at the time of the sale. That Aber took possession of the store and employed the same clerks, to wit: Johnson and the defendant. That the sign of Beach was not taken down, nor any external change made in the establishment. That Beach’s family resided in another part of the town. That there was no advertisement of a change in the store. That after this sale, Beach was employed the greater part of his time in the store, in making out and settling his accounts and sometimes officiated in the sale of goods. That he had the privilege of remaining in the store, for the transaction of his business. That other notes were there presented to Beach for payment without objection on his part. It wras further proved, that at the time the note was protested, the defendant had moved his family to his father-in-law’s in the county of Warren, and within a mile and three quarters of the village of Danville, which was a public place and where there was a Post-office, and that he was residing there or in the town of Danville, at that time. That the distance between Hope and where he resided, was five miles.
These are all the facts that appear upon the trial, material to be noticed in deciding the questions before us. And upon these facts, the court charged the jury, that although the evidence was sufficient to show, that demand of payment was made at the place of business of the drawer, yet such demand was not sufficient to charge the defendant, as it ought to have been made at his dwelling house. And further, that the law as a general rule, required notice of non-payment to be directed to the indorser at the Post-office nearest his residence. That in this case, this rule did not appear to have been complied with, and that the plaintiff’ *282 had not given evidence of proper diligence to find out the place to which the defendant had removed.
Upon this charge, the jury rendered a verdict for the defendant, and it is to this, that the plaintiff has taken exception.
If the court was right in assuming it as proved, that the demand was made at the drawer’s place of business, it committed an error in charging, that such demand was insufficient to charge the indorser. See Sussex Bank v. Baldwin, 2 Harr. 487. That it was his place of business, seems abundantly proved. It was the place where, at the date of the note, he transacted business as a merchant, where he remained to settle up that business after his sale, where his books of account were, where he was usually found, where his notes were presented for payment, without objection. He w-as a man of business, and if this was not his place of business, there is no evidence of his having any other. The presentment was therefore properly made there.
Was there due diligence used by the plaintiff to ascertain the residence of the defendant? It was the duty of the plaintiff to do so, and by his agent he ascertained, that he had removed from the place where he resided when he indorsed the note. The next inquiry was, to what place he had removed his family, and who so likely to give the information as his fellow clerk, his most intimate and last associate, whilst at Newark. There is no evidence, that the defendant removed his family secretly, he must be supposed therefore, to have left openly, to have avowed his intention of doing so, and declared the place to which he was going. To whom was he more likely to make this communication, than those with whom he last served, with whom he had his last settlements, and with whom he was most likely to hold correspondence. The agent accordingly resorted there for information, and there he was advised that the defendant had moved to Hope. He might have rested and relied upon this information, it came from the proper source. But he went farther, he received the same information from the very man who lodged the note for collection in the bank, the man whose interest it was to know, and who is presumed to know the residence of all the parties to it. Upon this evidence, I should have been satisfied if the jury had found, that due and diligent inquiry had been made by the plaintiff to ascertain the residence of the defendant, and that a notice under the circum *283 stances of this case, sent to the Post-office at Hope, was sufficient to bind the indorser. I think his honor who tried this cause also erred in this part of his charge, and that the plaintiff is entitled to a new trial.
Elmer, J.
This suit was brought against the defendant, as indorser of a promissory note, made by Isaac C. Beach, payable to the defendant, and indorsed to the plaintiff.
On the trial of the cause, the jury in accordance with the charge of the court, rendered a verdict for the defendant. The present application comes from the plaintiff, for a new trial, founded upon an alleged misdirection of the court.
The contract between the indorser and the indorsee, is a conditional one in its nature, and creates no liability until certain precedent acts are performed on the part of the indorsee, namely, demand of payment of the drawer, and notice of non-payment, to the indorser. Yet if the holder of a note has done all that a prudent and diligent man could naturally and fairly do under the circumstances, the court should be satisfied and require no more. The indorsee must give evidence of a demand, or of reasonable diligence to make it: and in case of non-payment, give notice to the indorser, or use due diligence to do so.
The note in this case became due on the Sabbath, the 1st day of July, 1837. On the trial, the plaintiff proved the signatures of the drawer and of the defendant, and that the clerk of a Notary, on the day the note became legally due, presented the same at the store of the drawer, in Newark, and demanded payment of a Mr. Johnson, a clerk in the store, (Beach not being there,) which was refused. The drawer resided with his family in Newark. On the subject of the demand, the court charged the jury : that “although in my opinion the evidence is sufficient to show, that demand of payment of the note, was made at the place of business of the drawer, yet such demand was not sufficient to charge the defendant, as by law the demand ought to have been made at the dwelling house of the drawer.
Since the trial of this cause, in the case of the Sussex Bank v. Baldwin and Shippen, it has been decided by this court, that a presentment and demand of payment of a promissory note, may be made “ at the drawer’s office, or regular known place of bu *284 siness, for the transaction of his moneyed.concerns, as well as at his residence.” This being the law in this court, that part of the charge of the judge, is therefore incorrect, and was there no other difficulty raised, to the right of the plaintiff to recover, the verdict should be set aside, and a new trial awarded.
It was further contended by the defendant on the trial, that according to the evidence given to the court and jury, the plaintiff had not shown, legal notice to the defendant, or due diligence to do so, of the presentment and non-payment of the note. The court was of that opinion, and charged- the jury accordingly. The evidence given by the parties, on this part of the case, so far as I have been able to collect it, from the state of the case furnished to the court, appears to me substantially as follows : The defendant was a clerk in Beach’s store, at the time the note was indorsed, and so continued until the time of his removal from Newark. The Notary not knowing the place to which be had removed, inquired of Johnson, a clerk in Beach’s store, and who had been a clerk there with defendant, from the time of the indorsement of the note, to the time of his removal; and was informed by Johnson, that the defendant had removed to Hope, Warren county. The notary also inquired of Hedges, another indorser upon the note, and in whose name the note had been lodged in the Newark Bank for collection, and received the same answer. The defendant removed with his family from Newark about the 20th June, 1837. He was seen by one of the witnesses examined for defendant, between the 20th and 25th June, 1837, at Danville, with his family, and did not then appear to be settled. And by another witness, who resided in Danville, that defendant arrived at that place, between the 1st and 20th June, 1837, was there on the 20th June; and immediately after his arrival, the defendant and his family went to Hoagland’s to reside permanently, but the witness had no knowledge of defendant’s intention to remove to Warren county, until his goods arrived at Danville, The witness entered into partnership with defendant, about the first of July, and commenced business at Danville. There.was a Post-office at Danville, and one at Hope. From Hoagland’s to Hope, five miles — from Hoagland’s to Danville, one and a half or two miles. Defendant’s father lived about a mile and a half from Hope. A regular notice of demand and *285 non-payment, was made cut by the Notary, and put in the Post-office at Newark, on the Monday next following the presentment, and addressed to the defendant, Hope, Warren county, New Jersey.
On this part of the case, the court charged the jury, “ that the law as a general rule, requires notice of non-payment of a note, to be directed to the indorser, at the Post-office, nearest his residence ; that in this case, the rule did not appear to have been complied with, and that the plaintiff had not given evidence of proper diligence to find out the place to which the defendant had removed.”
One of the objections taken on the argument of this motion, to this part of the charge is, “ that whether the plaintiff had used due diligence to find out the residence and give notice to the defendant, was a matter of fact to be settled by the jury.”
It has been much disputed, whether it is the province of the court or jury, to determine what is reasonable notice, and whether the holder of the note has used due diligence in making the demand and giving notice of non-payment. Due diligence is a question of law, founded upon facts, therefore partly one of law, and partly of facts. “ Reasonable notice is a question of law for the judges : whether notice has been given, is a question of fact for the jury, and as in all other cases, where the law and the facts are blended together, the jury must pass upon it.” In the case cited on the argument, Bank v. Lawrence, 1 Peters, 583, the court say, “ It seems to be well settled at this day, that when the facts are ascertained and undisputed, what shall constitute due diligence, is a question of law.” But this case by no means decides the law to be, that where there is evidence on both sides, as in the present case, the court are to determine the fact, and declare the law to the jury, in the progress of the trial. If that was so, there would not be any thing for the jury to determine. If the opinion of the judge must rule the matter of fact, the trial by jury would be useless. The court may and should if required, declare the law to the jury, and direct their attention to the facts, which the law requires the plaintiff should prove, to sustain his claim ; but leave the question, whether such facts-have been proved, to the determination of the jury, subject to a review, and the *286 opinion of the court, upon application for a new trial, should either party be dissatisfied with the verdict.
The better opinion is, that what is reasonable time for giving notice, is a question partly of law and partly of fact. Thejury are to find the facts, but when these facts are ascertained, the reasonableness of time becomes a question of law, and consequently to be determined by the court, and not by thejury. Chitty on Bills, 6 Edi. 224 and cases cited; 6 East Rep. 3.
As an excuse for the misdirection of the notice to defendant, the plaintiff alleges his ignorance of the defendant’s abode, and the use of due diligence to discover it, and that he addressed the notice according to the information received, which if true, is a legal excuse. Chitty on Bills, 6 Ed. 213. The plaintiff may prove, in excuse for not giving notice, that he was ignorant of the indorser’s place of residence, and then it is a question of fact, whether he used due diligence to discover it. Star. Ev. part 4, 269. No case was produced upon the argument, nor have I found any, where the question of due diligence, involving the further question, of the ignorance of the plaintiff concerning the residence of defendant, was not submitted to the jury. Indeed, it is one, in which, from its nature, no general rule can be laid down. Whether the indorsee has exercised ordinary and reasonable diligence, to ascertain the residence of the indorser, and given notice accordingly, must of necessity depend upon the particular circumstances of each case. Was the ignorance pretended or real ? Where and of whom should the plaintiff have inquired ? And of whom, and when, and where did he inquire, are questions of fact, that must be referred to the decision of the jury. It is a case where no acknowledged rule of law, or principle, defines or can define, what is ordinary and reasonable diligence. The question therefore seems to be one for the decision of the jury, under all the circumstances of the case. In Bateman v. Joseph, 12 East Rep. 433, Lord Ellenborough puts it as a question of fact to be determined by the jury, whether the plaintiff had used due diligence in acquiring a knowledge of the defendant’s residence. Thejury gave a verdict for the plaintiff; on an application for a, new trial, all the court agreed, that this was a question proper for the jury, and they had decided it. Same case reported, 2 Camp. N. P. C. 461.
*287 I am of opinion, the objection taken to the charge of the court, is supported, and that the question, whether the plaintiff had used due and proper diligence to find out the place to which the defendant had removed, and given notice accordingly, should have been submitted to the jury, as a question of fact, to be determined by them : and consequently a new trial be awarded. It is not necessary to give any opinion upon the other objection taken to the charge of the court.
Hornblower, C. J. and Ford, J. concurred.

Rule absolute.

Cited in Woodruff v. Daggett, Spencer 534.